# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 20, 2011 Session

# TRI AM CONSTRUCTION, INC., ET AL. v. J & V DEVELOPMENT, INC., ET AL.

**Appeal from the Chancery Court for Rhea County**
**Nos. 10410; 10424; 10426; 10428; 10432; 10450     Jeffrey F. Stewart, Chancellor**

---

**No. E2010-01952-COA-R9-CV-FILED-AUGUST 30, 2011**

---

This interlocutory appeal stems from a lien enforcement action. Tri Am Construction, Inc. ("Tri Am") filed a complaint in the Chancery Court for Rhea County ("the Trial Court") against J & V Development, Inc. ("J & V"), Randall E. Vick, Brenda B. Jung[1], and Branch Banking and Trust Company ("BB&T") to enforce a lien. BB&T[2] moved to dismiss Tri Am's complaint, citing alleged fatal procedural defects. The Trial Court denied BB&T's motion to dismiss and allowed Tri Am to amend its complaint to cure the procedural defects. We granted permission for this interlocutory appeal. We find that the Trial Court did not err in liberally construing the revised mechanic's and materialmen's liens statutes to permit Tri Am to amend its complaint in order to cure the procedural defects. We further find that the Trial Court did not err in declining to hold that BB&T's rights would be retroactively impaired by the liberal application of the revised mechanic's and materialmen's liens statutes. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

---

[1]Randall E. Vick and Brenda B. Jung apparently were dismissed from the suit over the course of the case. Richard Gossett, successor trustee under BB&T's Deed of Trust, was later added to the suit.

[2]Although there are multiple appellants on appeal, for convenience, and in keeping with the manner in which this case has principally been argued, we will refer to appellant BB&T unless circumstances specifically require otherwise.

Richard Gossett and P. Edward Pratt, Knoxville, Tennessee, for the appellants, Branch Banking and Trust Company and Richard Gossett, Substitute Trustee.

David B. Hamilton, Knoxville, Tennessee, for the appellant, J & V Development, Inc.

William G. Colvin, Chattanooga, Tennessee, for the appellee, Tri Am Construction, Inc.

Mary Beth Hagan, Murfreesboro, Tennessee, for the appellee, Century Fire Protection, LLC.

Edward L. Summers, Knoxville, Tennessee, for the appellee, Tindells', Inc.


**OPINION**

**Background**

Dillard Construction, Inc. ("Dillard")[3] and J & V entered into a contract whereby the former agreed to perform work on property owned by J & V at a site called Taylor's Landing. According to Dillard's pleading in subsequent litigation, visible commencement of construction on the project began "by at least" February 2007. In April 2007, BB&T's Deed of Trust on the relevant property was executed and recorded.

Tri Am entered into a contract in December 2007 with J & V to perform work at Taylor's Landing. On May 18, 2007, the revised mechanic's and materialmen's liens statutes, Tenn. Code Ann. § 66-11-101 *et seq.*, entered effect. The legal consequences of this legislative action are contested in this appeal. BB&T later recorded a second Deed of Trust on the property.

Tri Am filed a notice of lien in August 2008. According to its notice of lien, Tri Am last worked on the project in June 2008. In October 2008, Tri Am filed a complaint to enforce lien, stating, in part, that defendants had failed to pay Tri Am for part of its work. BB&T filed its answer in December 2008. BB&T moved to amend its answer in October 2009, ultimately filing an amended answer containing affirmative defenses in December 2009. BB&T also filed a motion to dismiss. BB&T argued that Tri Am's complaint to enforce lien was fatally defective. Hearings were held in this case in February and April,

---

[3]Dillard, originally a party to this appeal, was dismissed from this appeal by our order. Therefore, we will concentrate on the facts as they pertain to Tri Am.

2010. BB&T filed a second motion to dismiss, arguing that the statute of limitations had expired and Tri Am could not timely amend its original complaint to correct the claimed defects. In May 2010, the Trial Court entered its order, stating, in part:

> BB&T's Motion to Dismiss is based on allegations that that [sic] Tri-Am did not file its mechanic's and materialman's lien complaint under oath, that although Tri-Am prayed for issuance of a writ of attachment and furnished a bond for same, no writ of attachment was issued, that Tri-Am did not name the trustee under the deed of trust in favor of BB&T as a defendant in this action and that as a result of these deficiencies, no suit to enforce Tri-Am's lien rights was commenced within the applicable statute of limitations. Tri-Am's Response to the Motion to Dismiss includes a request that it be allowed to amend its complaint to correct the alleged deficiencies, among other arguments. The Court has previously ruled that the mechanic's and materialman's lien law in effect following May 18, 2007 (the "May 18 Law") is controlling in this case, and that Tri-Am's purported mechanic's and materialman's lien relates back to a date of visible commencement of operations at Taylor's Landing which occurred prior to the effective date of the May 18 Law even though Tri-Am's contract with the Owner/Developer (Defendant J & V Development, Inc.) was not signed and it did not begin its own operations until after that date. The Court also notes that the Trustee appeared and participated in a hearing in December, 2008, pursuant to a Motion to Stay Foreclosure, and agreed to an Order staying said foreclosure; accordingly the Trustee was on actual notice of these proceedings and submitted to the Court upon entry of the Order in January, 2009. The Court concludes that Tenn. Code Ann. § 66-11-148, a portion of the May 18 Law, provides that the mechanic's lien statute is to be construed liberally so as to provide the beneficial results, intents and purposes of the statute, and the Court concludes that under this law, the Court is to look to substance over form, so that the Amended Complaint may be filed to cure the failure to file suit under oath, to have an attachment issued and to add the trustee under the deed of trust as a party defendant in this case. Therefore, it is hereby
>
> ORDERED, ADJUDGED and DECREED that BB&T's Motion to Dismiss hereby is denied. Tri-Am shall be allowed to file an amended complaint to file suit under oath, to have an attachment issued and to add the trustee under the deed of trust as a party defendant in this case.

The Trial Court's May 2010 order also denied BB&T's second motion to dismiss. The Trial Court granted BB&T's motion for interlocutory appeal. We subsequently granted permission

to appeal pursuant to Tenn. R. App. P. 9.

## **Discussion**

We restate the issues raised on this interlocutory appeal as follows: 1) whether the Trial Court erred in liberally construing the mechanic's and materialmen's liens statutes to permit Tri Am to cure procedural defects in its lien enforcement action; and 2) whether the Trial Court erred in declining to hold that BB&T's constitutional rights would be retroactively impaired by a liberal application of the revised mechanic's and materialmen's liens statutes.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in liberally construing the revised mechanic's and materialmen's liens statutes to permit Tri Am to cure procedural defects in its lien enforcement action. The mechanic's and materialmen's liens statutes were revised, effective May 18, 2007. We, therefore, must determine initially whether the old or new lien statutes apply to Tri Am's claim. Both parties refer to the case of *Lee's Home Center, Inc. v. Hoy*, No. 01A01-9112-CH00464, 1992 WL 69624 (Tenn. Ct. App. April 8, 1992), *no appl. perm. appeal filed*. We stated, in part:

> We find nothing in T.C.A. § 66-11-146 to suggest that the legislature intended to have the provisions of the statute to operate and apply retroactively. Giving the language of the statute its natural and ordinary meaning, it is apparent that the legislature intended for this statute to apply only to contracts for construction of residencies that are entered into after the effective date of July 1, 1990. The statute abolishes the lien of mechanics and materialmen and provides that the only lien shall be "... in favor of the general contractor who enters into such contract with the owner...." 66-11-146(a)(2) (Supp. 1991) (Emphasis added.) Clearly, the operative words "who enters into" must necessarily mean and apply to a contract entered into when the statute itself is in full force and effect, i.e., July 1, 1990.
>
> Under the law prior to July 1, 1990, materialmen who furnished materials for residential construction to general contractors or subcontractors

acquired a lien only by virtue of statute, which required the materialmen to have a contract with the general contractor or a subcontractor. After July 1, 1990, only the general contractor on a residential construction job can have a lien-and only then if the contractor has a contract with the owner. Obviously, both before and after July 1, 1990, materialmen's rights, to whatever degree, are totally dependent on contract as provided by the statute. In the case at bar the general contractor and the Hoys entered into their contract on June 19, 1990, and all the rights of the plaintiffs in this case are derived from the general contractor's authority under that contract. Pursuant to their contracts with the general contractor to furnish materials, and, pursuant to T.C.A. § 66-11-115 (1982), plaintiffs acquired liens on the Hoys' property, which, by virtue of T.C.A. § 66-11-104, attached as of the date of the visible commencement of operations which indisputably was before July 1, 1990.

*Lee's Home Center, Inc.*, 1992 WL 69624, at *3.[4]

Tri Am argues that "the law applicable to a claim under the Mechanics' and Materialmen's Lien law is determined as of the date of the contract between the owner and to the general contractor/prime contractor, and the lien then attaches as the date of visible commencement of operations." We agree with Tri Am's interpretation and argument. Tri Am entered into its contract with J & V in December 2007. The lien law in effect at the time of the contract governs this lien claim. In the case now before us, the lien statutes in effect in December 2007, the date of Tri Am's contract, apply.

Having determined that the revised mechanic's and materialmen's liens statutes apply in this matter, we now must decide whether the Trial Court erred in its interpretation of the new law. This Court discussed our primary goal in matters involving statutory construction in *State ex rel. Irwin v. Mabalot*, No. M2004–00614–COA–R3–CV, 2005 WL 3416293 (Tenn. Ct. App. Dec. 13, 2005), *no appl. perm. appeal filed*. We stated:

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). Courts must do so without unduly restricting or expanding a statute beyond its intended scope. *In re C.K.G., C.A.G., & C.L.G.*, 173 S.W.3d 714, 721–22 (Tenn. 2005). To determine legislative intent, one must look to the natural and ordinary meaning of the language used in the statute itself. We must examine any provision

---

[4]We note that our analysis in *Lee's Home Center, Inc.* was in the context of older law. Nevertheless, we find the reasoning applicable to the instant case under the current law.

within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC,* 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). Statutes relating to the same subject matter or having a common purpose are to be construed together. *In re C.K.G., C.A.G., & C.L.G.*, 173 S.W.3d at 722.

As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001), citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995). Courts must look to a statute's language, subject matter, objective or purpose, and the wrong it seeks to remedy or prevent. *In re C.K.G., C.A.G., & C.L.G.*, 173 S.W.3d at 722. Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676–77 (Tenn.1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). Courts must presume that the General Assembly selected these words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.*, 798 S.W.2d 254, 257 (Tenn. App. 1990), and that the use of these words conveys some intent and carries meaning and purpose. *State v. Levandowski*, 955 S.W.2d 603, 606 (Tenn. 1997); *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn. 1984).

*Mabalot*, 2005 WL 3416293, at *6.

The Trial Court gave special emphasis in its order to Tenn. Code Ann. § 66-11-148 (Supp. 2010). Whether Tri Am could amend its complaint to cure defects rests heavily on the effect given to this statute. Tenn. Code Ann. § 66-11-148 provides:

(a) This chapter is to be construed and applied liberally to secure the beneficial results, intents, and purposes of the chapter.

(b) Substantial compliance with this chapter is sufficient for the validity of liens arising under this chapter and to give jurisdiction to the court to enforce the liens.

-6-

(c) Any document required or permitted to be served, recorded or filed by this chapter that substantially satisfies the applicable requirements of this chapter is effective even if it has nonprejudicial errors or omissions.

Tenn. Code Ann. § 66-11-148 (Supp. 2010).

BB&T points to allegedly fatal defects in Tri Am's original complaint: (1) Tri Am failed to file its lien complaint under oath; (2) Tri Am failed to timely join the successor trustee on the Deed of Trust; (3) Tri Am failed to have an attachment issued, although an attachment was prayed for in Tri Am's original complaint; and (4) Tri Am failed to include a proper acknowledgment on its notice of lien. BB&T also alleges that Tri Am's action was not timely brought properly within one year from Tri Am's last work on the project.

BB&T argues that Tenn. Code Ann. § 66-11-148 (Supp. 2010) merely represents a codification of existing common law. BB&T further argues that, in the context of many years of strict construction of the mechanic's and materialmen's liens statutes in Tennessee, "the lien statute is to be strictly construed as to perfection and validity and liberally construed as to the subject matter of the lien and the remedy for its enforcement." We disagree. We hold that the new statutory language, according its own natural terms, states that the entire chapter rather than just a portion of the chapter is to be construed liberally. We conclude that any defects in Tri Am's complaint were nonprejudicial to BB&T and fell squarely within the statute's stated parameters of liberal construction to secure the benefits of the chapter. BB&T's argument that Tri Am could not timely amend its complaint is without merit.[5]

Tenn. Code Ann. § 66-11-148 (Supp. 2010), read as a whole and without any contorted interpretation, requires liberal construction of the entire mechanic's and materialmen's lien chapter, not simply one portion. Notwithstanding the historic legacy of lien law in Tennessee, we are obliged to give effect to the revised law as enacted by our General Assembly and as pertinent to this case. We affirm the judgment of the Trial Court as to its liberally construing the lien statutes to permit Tri Am to cure procedural defects in its lien enforcement action.

We next address whether the Trial Court erred in declining to hold that BB&T's constitutional rights would be retroactively impaired by a liberal application of the revised mechanic's and materialmen's liens statutes. In arguing that its rights were impaired,

---

[5]Although not necessary to our decision, we also take note of BB&T's long delay before moving to amend its answer to contest the defects and then arguing that it was now too late for Tri Am to amend its answer to cure the defects.

BB&T invokes the case of *Kee v. Shelter Ins.*, 852 S.W.2d 226 (Tenn. 1993), which we have previously examined:

> Our supreme court dealt with a similar conflict, one resulting from the subsequent enactment of a savings statute and whether it applied retroactively, thereby trumping an existing policy of insurance that required insureds to bring suits on the policy within "one year after the loss or damage occurs after any claim is denied ." *Kee,* 852 S.W.2d at 227. The insured in *Kee* complied with the policy by commencing the action within one year, however, the insured voluntarily dismissed the action. When the insured re-filed the action, Shelter moved to dismiss based on the contract's limitation-of-action provision. The insured relied on an amendment to the savings statute which became effective after the policy issued and the loss occurred, but before the original action was filed and the voluntary dismissal taken. If applied retrospectively, the savings statute saved the action because the amendment made the savings provision applicable to a limitation of action in contracts, which had not been the case under prior law. *Kee* found the savings statute remedial and therefore should be applied retrospectively unless by doing so would take away a vested right or existing obligation under the policy, the parties contract. 852 S.W.2d at 228. In its analysis the court considered that at the time the contract at issue was executed the insured would have been required to bring the suit within one year after the claim was denied and that under then existing Tennessee court decisions the savings statute did not apply to the contractual limitations such as the one at issue. The court emphasized the significance of laws in existence at the time a contract is executed stating, "It is well established that the laws affecting enforcement of a contract, and existing at the time and place of its execution enter into and form part of the contract." 852 S.W.2d at 228.

> > Those laws which in any manner affect the contract, whether its construction, the mode of discharging it, or which control the obligation which the contract imposes, are essentially incorporated with the contract itself ....

> > [T]he legal obligation of contracts-that is, the legal means of enforcing them, which constituted their legal obligation, or the legal obligement by which they were enforced-should not be impaired or weakened, or rendered less effective, than when the contract was entered into and the obligation imposed or taken

upon the party ....

*Kee*, 852 S.W.2d at 228-229, quoting *Webster v. Rose*, 53 Tenn. 93 (1871). Finding retrospective application of the amendment to the savings statute improper, the *Kee* court stated:

> In the present case, the loss occurred, and therefore the contractual right accrued, nearly one year before the statutory amendment was adopted. At the time the insurance contract was executed and at the time of loss, the law of this state, as incorporated into the contract, required that the suit commenced within the contractually limited time be the suit prosecuted to judgment. The amendment, if applied retrospectively, negates that requirement and allows the policyholder to extend his cause of action, despite the fact that he failed to comply with the contractual obligation. Clearly, retrospective application of the amendment would impair the accrued contractual rights of the insuror. Accordingly, we conclude that where the contract was already executed and the contractual right accrued before the amendment's effective date, retrospectively applying the 1989 amendment impairs the obligation of contract and violates Article I, Section 20 of the Tennessee Constitution.

852 S.W.2d at 229.

> If we were to apply the 1998 statute retroactively, we would be creating a right that Wilson did not have when the oral agreement was purportedly entered into, the right to now enforce what was an unenforceable contract under existing law in 1997. *Kee* makes it clear that such a result would be constitutionally impermissible, 852 S.W.2d at 229, and Article I, Section 20 prohibits us from making enforceable that which was unenforceable.

*Wilson v. Smythe*, No. M2003-00645-COA-R3-CV, 2004 WL 2853643, at *4-5 (Tenn. Ct. App. Dec. 10, 2004), *no appl. perm. appeal filed*.

We regard the relevant changes to the mechanic's and materialmen's liens statutes as procedural rather than substantive. While the Trial Court characterized the revised lien law as providing for "substance over form," we do not regard this as meaning that the Trial Court found that the changes to the law were substantive in nature. Even if we were to regard the revisions to the lien statutes as substantive, it is important to note that no new

lien or right was created by the liberal application of the amended lien statutes. The Trial Court simply adhered to the revised statutory requirement of liberal construction and permitted Tri Am to cure the procedural defects to perfect its lien and did not create any new lien or right.

Prior to the revisions in the mechanic's and materialmen's liens statutes, the law provided that "[t]he lien shall relate to and take effect from the time of the visible commencement of operations. . . ." Tenn. Code Ann. § 66-11-104(a)(2004)(amended 2007). The revised statute states that "[t]he lien provided by this chapter shall attach and take effect from the time of the visible commencement of operations. . . ." Tenn. Code. Ann. § 66-11-104(a)(Supp. 2010). Under either version of the lien statutes, Tri Am's lien took "effect from the time of the visible commencement of operations. . ." which was in February 2007. Under either version of the statute, given that the date of visible commencement of operations was prior to BB&T's recording of its Deed of Trust, BB&T would have been aware that another party's lien could take priority over its Deed of Trust. The liberal application of the amended lien statutes did not create any new lien or any new right from what would have been in "effect" under the earlier lien statutes. BB&T did not have a vested right in the maintenance of the strict construction procedural regime under the previous law. BB&T's hope that another party would fail to comply with the stricter procedural requirements of the pre-May 2007 lien statutes as to a lien that took "effect" from February 2007 cannot be counted as a vested right.[6] We affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, J & V Development, Inc., Branch Banking and Trust Company, and Richard Gossett, Substitute Trustee, and their sureties, if any.

_____
D. MICHAEL SWINEY, JUDGE

---

[6] We again observe that BB&T did not raise these deficiencies in its original answer, waiting many months before moving to amend its answer.